**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00606-NYW

CHRISTOPHER MEEK,

      Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Allstate Fire and Casualty Insurance Company's ("Defendant" or "Allstate") Motion for Summary Judgment [#26, filed January 12, 2018]. The Motion is before the court pursuant to the Order of Reference dated April 19, 2017 [#17], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, Allstate's Motion for Summary Judgment is **DENIED**.

## PROCEDURAL BACKGROUND

      Plaintiff Christopher Meek ("Plaintiff" or "Mr. Meek") commenced this action on February 3, 2017, by filing a Complaint in the District Court for Denver County, Colorado. [#3] Plaintiff asserts four claims for Breach of Contract, "Violation of C.R.S. § 10-3-1115/First Party Statutory Claim pursuant to C.R.S. § 10-3-1116," Breach of Duty of Good Faith and Fair Dealing, and "Claim for Underinsured Motorist Benefits," arising out of a motor vehicle accident. [*Id.*] On March 7, 2017, Allstate removed the action to this court asserting jurisdiction

pursuant to 28 U.S.C. § 1332.  *See* [#1].

After the close of discovery, Allstate filed the Motion for Summary Judgment as to Plaintiff's first three claims, but not as to the fourth claim.  *See* [#26].  Plaintiff filed a Response on February 2, 2018, [#27], and Allstate filed a Reply on February 19, 2018 [#30].  Having reviewed the Parties' briefing, the entire docket, and the applicable case law, this court finds that oral argument would not materially assist in the disposition of the Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994).  "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson,* 477 U.S. at 248.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670–71. Once the movant meets this initial burden, the nonmovant assumes the burden to put forth sufficient evidence to demonstrate the essential elements of the claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). And the nonmoving party's evidence must be more than "mere reargument of his case or a denial of an opponent's allegation," or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

## MATERIAL FACTS

### Undisputed Facts

The following facts are taken from the Motion for Summary Judgment and associated briefs and are undisputed.[1] On July 9, 2015, Plaintiff was involved in a motor vehicle accident

---

[1] In admitting that facts stated by Defendant are undisputed, Plaintiff qualifies his admissions by asserting that they are admitted "for the purpose of this response." *See, e.g.,* [#27 at 4, ¶¶ 1, 8,

with Brett Branam, a nonparty.   Following the motor vehicle accident, Mr. Meek sought

uninsured motorist ("UIM") benefits from his insurer, Allstate.   [#26 at 3, ¶ 1].   By July 10,

2015, Allstate had determined that Plaintiff was not comparatively at-fault for the collision.   [#27

at 6, ¶ 2; #30 at 2, ¶ 2].   Approximately nine months later, Allstate received a request from

Plaintiff's counsel for permission to settle the underlying third-party claim for the available

policy limit of $25,000.   [#27 at 6, ¶ 4; #30 at 2, ¶ 4].   As of May 9, 2016, the claim adjuster

handling the claim was aware that Plaintiff had been billed close to $70,000 in medical expenses.

[#27 at 6, ¶ 5; #30 at 2, ¶ 5].

> The Allstate policy at issue includes the following language:
>
> If a premium is shown on the Policy Declarations for Uninsured Motorists
> Insurance for Bodily Injury, we will pay damages that an insured person is legally
> entitled to recover from the owner or operator of an uninsured auto because of
> bodily injury sustained by an insured person. The bodily injury must be caused by
> an accident and arise out of the ownership, maintenance or use of an uninsured
> auto.…
>
> The right to benefits and the amount payable will be decided by agreement
> between the insured person and us. If the insured person and we do not agree,
> then the disagreement will be resolved in a court of competent jurisdiction.

[#27-9].

> In a letter dated August 29, 2016, Plaintiff proposed to Allstate "a compromise settlement

---

9].   But such qualification alone does not comport with Rule 56(c) of the Federal Rules of Civil
Procedure which requires:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations, stipulations (including those made
for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine
dispute, or that an adverse party cannot produce admissible evidence to support the fact.

of his claims," in an attempt to "resolve the underlying Underinsured Motorist claim" ("Demand Letter"). [#26-1]. Allstate received the Demand Letter on September 8, 2016. *See* [#26-2 at 31]. The Demand Letter sought damages associated with a right hip arthroscopy and referenced the inclusion of records from Comprehensive Family Medicine, Orthopedic Associates, and Health Images. *See* [#27-1]. The Demand Letter claimed $77,759.04 in economic losses. It also asserted an unspecified amount for non-economic damages, supported by a section titled "Non-Economic Damages-Impact on Quality of Life," in which Plaintiff provided details about the impact the car accident and resulting injuries had had on his life. Plaintiff also described, in support of his pain and suffering claim, the aggravating effect of his employment duties on his injuries. [#27-1 at 1-9]. Allstate asserts that it began its initial evaluation of Plaintiff's claim on September 14, 2016. [#26 at 3, ¶ 5; #26-2 at 31-35]. Based on the information provided, Allstate valued Plaintiff's claim between $90,301.07 and $100,301.07. [#26-2 at 34-35]. After subtracting the payment made by Mr. Branam, Allstate valued Plaintiff's claim between $65,301.07 and $80,301.07. [*Id.*].

On September 22, 2016, twenty-three days after Plaintiff wrote the Demand Letter and fourteen days after Allstate received the Demand Letter, Allstate offered $65,000 to settle Plaintiff's UIM claim. [#26-3]. Allstate renewed its offer three more times, [#26-4 through #26-6]; and, on December 5, 2016, Plaintiff's counsel "attempted to call Defendant…and left a voicemail." [#27 at 4, ¶ 16 (citing #26-2 at 44)]. Defendant's claim notes contain the following record from December 5, 2016: "Attorney…called…I called back and left message…she says she has to have policy limits, I have room to move but not limits." [#26-2 at 44]. The claim notes further indicate that the claim adjuster advised Plaintiff's attorney that the file was missing

---

Therefore, for the purposes of jury instructions, the facts admitted by Plaintiff in the context of

Plaintiff's physical therapy records.  Plaintiff's attorney stated that the file should contain some but not all of the physical therapy records; and, upon the adjuster's insistence that she had no physical therapy files, Plaintiff's attorney stated she would resubmit for further evaluation of the claim.  *See* [*id.*]  The claim notes indicate that Plaintiff's attorney submitted a copy of Plaintiff's Denver Physical Therapy records the same day.  [#26 at 5, ¶ 18 (citing #26-7); #27 at 5, ¶ 18].

On December 21, 2016, Allstate again offered to settle, [#26 at 6, ¶ 23; #27 at 5, ¶ 23], and, on January 16, 2017, Allstate again requested missing documentation for purposes of claim evaluation and re-evaluation, if necessary.  [#26 at 6, ¶ 26; #27 at 6, ¶ 26].  On February 2, 2017, Plaintiff, through counsel, informed Allstate that he had provided it with adequate information to evaluate the claim; Plaintiff initiated this lawsuit the following day.  [#26 at 6, ¶ 27; #27 at 6, ¶ 27].  To date, Plaintiff has not received any payment under the UIM portion of his Allstate insurance policy.  [#27 at 7, ¶ 11; #30 at 4, ¶ 11].  A reservation of rights letter has never been issued by Allstate in connection to Plaintiff's UIM claim, and it is undisputed that Plaintiff's claim is covered under the Allstate policy in effect on the date of loss.  [#27 at 9, ¶ 17; #30 at 4, ¶ 17].

<u>Disputed Facts</u>

The following facts are taken from the Motion for Summary Judgment and associated briefs and are disputed.  It is unclear when Plaintiff first notified Allstate of a potential claim for UIM benefits.  Plaintiff asserts he notified Allstate on December 8, 2015, [#27 at 6, ¶ 1 (citing #26-2 at 45)]; and Defendant contends that it learned of Plaintiff's claim in the Demand Letter, dated August 29, 2016 and received by Allstate on September 8, 2016, [#30 at 2, ¶ 1 (citing #26-1)].  Plaintiff asserts that as a result of the accident, he sustained multiple injuries including a

this Motion are stipulated facts, unless Plaintiff can persuade the court otherwise.

labral tear to his right hip, which ultimately required surgery.  [#27 at 6, ¶ 3 (citing #26-2 at 32)].

Defendant contends it is "without sufficient knowledge to determine whether the full extent of

Plaintiff's injuries were 'as a result of the accident.'"  [#30 at 2, ¶ 3]; *see* [#26-2 at 32 (claim

notes acknowledge MRI results show "labral tear and other abnormalities," and that Plaintiff was

"referred to Ortho")].

Allstate states that upon review of the Demand Letter, it "noted a reference to physical

therapy treatment that had occurred prior to the Plaintiff's hip surgery," [#26 at 3, ¶ 6 (citing

#26-1 at 3)], and further states that it was not, however, "provided with the pre-surgical therapy

records," nor "with an authorization to obtain the same."  [*Id.* (citing #26-2 at 33-34)].  Plaintiff

disputes this assertion, and states that his Demand Letter "included records from Mile High

Surgery Center, Denver Physical Therapy Center, Comprehensive Family Medicine, Orthopedic

Associates," and that the "Orthopedic Associates records included pre-surgery physical therapy

records from 2/15/2016."  [#27 at 4, ¶ 6 (citing #27-1 at 39) (emphasis omitted)].  The page

Plaintiff cites is dated February 15, 2016, and appears to be a form filled out by a "PT,"

following an exam performed on Plaintiff.  *See* [#27-1 at 39].  Plaintiff further disputes

Defendant's assertion as follows: "With respect to Defendant's allegation that Allstate was not

provided with a medical record release, Allstate never sent medical record releases for Plaintiff

to execute."  [#27 at 4, ¶ 6].  Allstate represents that the "physical therapy records Plaintiff

purports were provided were not the pre-surgical physical records Allstate determined were

missing."  [#30 at 3, ¶ 6 (citing #26-1 at 3-5, #26-2 at 33-34)].

Allstate asserts that on December 16, 2016, it "notified Plaintiff's counsel that the

physical therapy records delivered three days earlier were duplicates and that the requested pre-

surgery therapy records had not been provided," and that "[w]ith no new information presented,

Allstate again offered $65,000.00 to resolve the Plaintiff's UIM claim." [#26 at 5, ¶ 19 (citing #26-8)]. Allstate asked that Plaintiff send physical therapy records predating his surgery, if any exist. [*Id.*] Plaintiff disputes this assertion as follows: "[t]he settlement evaluation packet included Orthopedic Associates records which pre-surgery physical therapy records from 2/15/2016." [#27 at 5, ¶ 19 (citing #27-1 at 39)].

Plaintiff states that on December 19, 2016, his attorney sent Allstate a letter, "which Allstate seemingly responded to on December 21, 2016." [#27 at 5, ¶ 20 (citing #27-2 at 46, #27-7)]. The December 19 letter confirms the conversation held with Allstate on December 15, 2016, and states that the attorney's office "faxed over another copy of the Physical Therapy records to you as you requested…" [#27-7 at 1]. The letter also states: "As we previously discussed the week prior, Mr. Meek's medical bills alone are over $76,235.00 and increasing, as he is still undergoing Physical Therapy which is anticipated to continue until the summer of 2018." [#27-7 at 1]. Allstate asserts that it never received the December 19 letter, [#26 at 5, ¶ 21; #26-10 at 157:25-158:24], and that the claim notes do not indicate otherwise. [#26 at 5, ¶ 22; #26-2 at 45-46]. Plaintiff disagrees with Allstate's representation of the claim notes, which reference "Right Fax Legal Correspondence" on December 20, 2016, and note "GEN_U_009 Letter sent" to Plaintiff's attorneys on December 21, 2016. [#27 at 5, ¶ 22; #26-2 at 46]. The claim notes additionally state on December 22, 2016, "Atty ofc sent in duplicate P/T recds and bills…f/u on wage loss…called atty ofc & spoke with [paralegal]…request wage loss…," and state on December 27, 2016, "attorney letter faxed 12/20/16 – dated 12/19/16." [#26-2 at 46-47]. Allstate's claim adjuster testified that the only letter delivered to Allstate on or about December 19, 2016, was a letter requesting a certified copy of the applicable insurance policy with the certificate of coverage for all vehicles in the household, [#26-10 at 155:7-157:24], and that the

claim notes reflect this: "Req copy of policy and dec page for all vehicles in the household…Julie please send copy of certified policy and dec page to the attorney." [#26-2 at 47].

Plaintiff and Allstate similarly dispute that Plaintiff sent a second letter to Allstate on January 10, 2017. Allstate contends that the second letter, like the first, "did not have a facsimile cover sheet or a date stamp proving receipt by Allstate," and its claim adjuster testified that she did not receive or review such a letter. Plaintiff asserts that the claim notes demonstrate that Plaintiff sent and Allstate received the letter. [#26 at 6, ¶¶ 24, 25; #27 at 6, ¶¶ 24, 25; #26-10 at 158:25-159:25; #26-2 at 47].

Additionally, Plaintiff contends that in September 2016, Defendant "determined Plaintiff was entitled to at least $65,000 in UIM benefits," [#27 at 7, ¶ 8 (citing #26-3 at 9)]; Defendant asserts that it "made a good faith settlement offer of $65,000.00 to Plaintiff after it concluded that his costs and expenses were fully covered by the underlying bodily injury settlement." [#30 at 3, ¶ 8]. Plaintiff states that the claim adjuster reserved his claim "at $65,301-$75,301.07 with another $5,000 potentially if provided with 'missing' p/t records she assumed existed," [#27 at 7, ¶ 9 (#26-2 at 34, #26-3)]; Defendant contends it "was of the opinion that pre-surgical physical therapy records did, in fact, exist based on several detailed notes contained in the medical records." [#30 at 3, ¶ 9 (citing #26-1 at 3-5, #26-2 at 33-34)]. Plaintiff asserts that Allstate never communicated to him that it was disputing any of his medical expenses, [#27 at 7, ¶ 10 (citing #26-2 at 44)]; Defendant states that it "continued to investigate Plaintiff's medical treatment including, but not limited to, requesting additional medical records to fully evaluate Plaintiff's UIM claim," and that it "never refused or accepted Plaintiff's medical expenses," due to its "ongoing investigatory efforts." [#30 at 3-4, ¶ 10].

Plaintiff also asserts that Allstate refused to consider permanent impairment in its evaluation of his injuries; and, while Allstate does not dispute the assertion, it counters that it "suspected Plaintiff's extensive medical history, ongoing physical activities, and physical lifestyle were the likely cause of any alleged permanent impairment and/or current symptomatology," and asserts that Plaintiff "failed to provide medical evidence of a permanent impairment."   [#27 at 7, ¶ 12; #30 at 4, ¶ 12].   Plaintiff represents that on February 2, 2017, it sent a letter to Allstate stating that "Allstate was previously provided 'adequate information to conclude Mr. Meek's damages exceed the available UIM coverage on his policy," and inquiring "into the steps Allstate had undertaken to secure the additional information it purportedly needed"; Plaintiff further represents that "[t]o date, Allstate has not responded to the substantive questions posed in this correspondence."   [#27 at 8, ¶ 13 (citing #26-14)].   Allstate concedes it received the letter, but asserts that "rather than wait for Allstate to respond, Plaintiff filed suit the next day on February 3, 2017. Providing Allstate one day to respond to a letter is not reasonable under any standard, including those articulated by the Colorado Division of Insurance."   [#30 at 4, ¶ 13].   Plaintiff asserts that he "cooperated with Allstate during the course of its investigation and evaluation of his UIM claim."   [#27 at 8, ¶ 15 (citing #27-5 at 142:21-25)].   Allstate disputes the assertion and states that it "made several requests for missing documentation, but never received such."   [#30 at 4, ¶ 15].   The Parties dispute whether Allstate provided Plaintiff with a medical release authorization.   *See* [#27 at 8-9, ¶ 16 (citing #27-5 at 101:20-102:2)[2]; #30 at 4, ¶ 16 (citing #26-2 at 26-27)].

Plaintiff contends that Allstate "did not question the causation of [his] injuries or relatedness of [his] medical bills for the purpose of evaluating his UIM claim."   [#27 at 9, ¶ 19

---

[2] The cited testimony is not included in the exhibit Plaintiff references.

(citing #27-5 at 68:1-5)].   Allstate disputes this, and asserts that it "attempted to determine causation by undergoing extensive investigation including, but not limited to, requesting medical documentation."   [#30 at 4, ¶ 19].   Plaintiff asserts that Allstate never attempted to speak to his treating doctors regarding his prognosis following surgery.   [#27 at 9, ¶ 20 (citing #27-5 at 101) [3]].   Allstate does not dispute this fact, but counters that it "did not speak to Plaintiff's providers because Plaintiff never authorized Allstate to do so."   [#30 at 5, ¶ 20].   Plaintiff asserts that Allstate never attempted to speak to him "about the ongoing effects of his injuries in connection with their investigation and evaluation of his UIM claim." [#27 at 5, ¶ 21]; and Allstate replies that it "diligently communicated with Plaintiff's counsel regarding Plaintiff's alleged injuries and limitations."   [#30 at 5, ¶ 21].

## ANALYSIS

Allstate argues the record demonstrates that the Parties merely disagreed on the amount of benefits owed, that there is no evidence to show that Allstate unreasonably delayed or denied payment of insurance benefits to Plaintiff, or that Allstate failed to perform under the contract or acted unreasonably or in violation of industry standards, and that, under Colorado law, an insurer may challenge claims that are "fairly debatable."   [#26 at 2, 8].   Mr. Meek contends essentially that Allstate improperly delayed payment of his claim by repeatedly requesting physical therapy records, which his attorneys had already provided, and wage loss documentation, which he states was irrelevant to his claim, that Allstate's conduct violated multiple provisions of the Unfair Claim Settlement Practices Act, and that Allstate is liable for bad faith by "continuing to force its insured to expend resources litigating issues raised by its Motion that Colorado Courts have consistently rejected."   [#27 at 2-3, 10].

---

[3] The cited testimony was not included in the exhibit Plaintiff references.

As detailed above, the Motion for Summary Judgment and associated briefing reveal that several material facts are in dispute, namely: facts regarding whether Allstate would have assessed Plaintiff's claim differently absent the misunderstanding related to the physical therapy records and lost wage documentation; whether Allstate received the December 19, 2016 letter; and whether Allstate supplied and Plaintiff failed to execute the release for his medical records. For these reasons, as discussed more thoroughly below, the court denies Allstate's Motion for Summary Judgment.

## I.    **Applicable Law**

A federal court assesses state law claims according to the substantive law of the state when jurisdiction is based on the parties' diverse citizenship. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014).

### A.    <u>Common Law Claims</u>

In Colorado, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted). "The interpretation of an insurance contract is a question of law" to which traditional principles of contract interpretation apply. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).

An insurer must deal in good faith with its insured. *Zolman v. Pinnacol Assurance,* 261 P.3d 490, 496 (Colo. App. 2011) (citing *Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 342 (Colo. 2004)). "Due to the 'special nature of the insurance contract and the relationship which

exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair

dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins.*

*Co.,* 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462,

466 (Colo. 2003)).  In the context of a first-party claim of bad faith, as here, Plaintiff must show

that Allstate's conduct was unreasonable and that Allstate acted with knowledge or reckless

disregard that its conduct was unreasonable. *See Travelers Ins. Co. v. Savio,* 706 P.2d 1258,

1272, 1274 (Colo. 1985).[4]  The *Savio* court instructed:

> Whether an insurer has acted reasonably in denying or delaying approval of a
> claim will be determined on an objective basis, requiring proof of the standards of
> conduct in the industry. The second element of the test reflects a reasonable
> balance between the right of an insurance carrier to reject a non-compensable
> claim submitted by its insured and the obligation of such carrier to investigate and
> ultimately approve a valid claim of its insured. If an insurer does not know that its
> denial of or delay in processing a claim filed by its insured is unreasonable, and
> does not act with reckless disregard of a valid claim, the insurer's conduct would
> be based upon a permissible, albeit mistaken, belief that the claim is not
> compensable.

706 P.2d at 1275.

The determination of whether an insurer has breached its duties to the insured is one of

reasonableness under the circumstances.  *Estate of Morris v. COPIC Ins. Co.,* 192 P.3d 519, 523

(Colo. App. 2008).  The inquiry addresses whether a reasonable insurer under similar

circumstances would have denied or delayed payment of the claim.  *Id.*  "[I]f a reasonable person

would find that the insurer's justification for denying or delaying payment of a claim was 'fairly

debatable,' this weighs against a finding that the insurer acted unreasonably. Nevertheless, fair

---

[4] A first-party claimant means an individual, corporation, association, partnership, or other legal
entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an
insurance policy. Colo. Rev. Stat. § 10–3–1115.  *See Sunahara v. State Farm Mut. Auto. Ins.
Co.*, 280 P.3d 649, 657 (Colo. 2012) (en banc) (explaining that UIM claims are "first-party"
claims because the insured "is suing his own insurance company").   It is undisputed that Mr.
Meek is a first-party claimant for the purpose of this lawsuit.

debatability is not a threshold inquiry that is outcome determinative as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759-60 (Colo. App. 2012). The Tenth Circuit has held that, "[u]nder this authority, an insurer could unreasonably delay or deny a claim for benefits even if that claim is fairly debatable." *Etherton v. Owners Insurance Company*, 829 F.3d 1209, 1226-27 (10th Cir. 2016) (citing *Fisher v. State Farm Mut. Auto. Ins. Co.*, No. 13CA2361, --- P.3d ----, 2015 WL 2198515, at *4–5 (Colo. App. May 7, 2015) ("[W]e disagree with [Defendant] that, under section 10-3-[-]1115, an insurer's decision to delay or deny payment of a 'fairly debatable' UIM claim cannot be unreasonable as a matter of law."); *Hansen v. Am. Fam. Ins. Co.*, --- P.3d at ----, 2013 WL 6673066, at *6–7; *Vaccaro*, 275 P.3d at 759). Accordingly, "fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably." *Etherton*, 829 F.3d at 1227. Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists, *Zolman,* 261 P.3d at 497, but may be decided as a matter of law, in appropriate circumstances, when there are no genuine disputes of material facts. *COPIC,* 192 P.3d at 524.

### B.    Statutory Claim

A UIM "insurer is…responsible for damages exceeding the tortfeasor's liability policy limit, subject only to the UIM coverage limit in the insured's policy." *Baker v. Allied Prop. & Cas. Ins. Co.,* 939 F. Supp. 2d 1091, 1109–10 (D. Colo. 2013). Section 10-3-1115 prohibits an insurance company from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of any first-party claimant. Colo. Rev. Stat. § 10-3-1115(1)(a). Section 10–3–1116 states that "[a] first-party claimant as defined in section 10–3–1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district

court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10–3–1116(1).  Section 10-3-1115 specifies that an insurer's delay or denial "was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  *Id.* at § 10-3-1115(2).

The statutory claim for bad faith "is in addition to, and does not limit or affect, other actions available by statute or common law."  Colo. Rev. Stat. § 10-3-1116(4).  Thus, sections 10-3-1115 and 10-3-1116 create a right of action separate from the common law tort of bad faith breach of an insurance contract.  However, in contrast to the common law claim for bad faith, all that section 10-3-1115 requires for liability is that "a first-party claim be denied without a reasonable basis."  *Etherton*, 829 F.3d at 1226 (quoting *Vaccaro*, 275 P.3d at 756).  As with the common law claim, the reasonableness of an insurer's conduct is assessed objectively, based on proof of industry standards.  *See Fisher*, --- P.3d at ----, 2015 WL 2198515, at *9.

Colorado's Unfair Claims Settlement Practices Act proscribes a variety of unfair claim settlement practices and states, for example, that insurers may not refuse claims without conducting a reasonable investigation and that they shall promptly provide a reasonable explanation for a denied claim or for a settlement offer.  Colo. Rev. Stat. §§ 10-3-1104(1)(h)(IV) and (XIV).  Section 10-3-1113(4) provides that "[i]n determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct."  The Unfair Claims Practices Act "may be used as valid, but not conclusive, evidence of industry standards."  *See Meadows v. Elec. Ins. Co.*, No. 15-cv-02524-MEH, 2016 WL 7868824, at *9 (D. Colo. June 30, 2016) (quoting *Allen*, 102 P.3d at 344).

II.    **Application**

A.    Arguments

Both Parties focus their arguments on the statutory bad faith claim.  Allstate argues that the Parties merely disagree as to the nature and extent of Plaintiff's injuries and the value of those injuries, and there is no evidence to show that Allstate acted unreasonably to delay or deny payment.  Allstate describes the timeline of events as follows.  It received Plaintiff's insurance claim on September 8, 2016, began processing the claim within six days, and prepared an evaluation relating to Plaintiff's claimed injuries and damages fourteen days after receipt of the initial demand.  [#26 at 9].  After consideration was given for the $25,000 paid by the at-fault party, Allstate evaluated Plaintiff's claim between $65,000 and $80,000.  [*Id.*]  On September 22, 2016, Allstate communicated its settlement offer of $65,000 and asked for additional documents.  Allstate restated its offer on September 30, October 28, and November 26, 2016.  On December 13, 2016, "Plaintiff called Allstate and represented, through counsel, that he was producing a 'complete' copy of his medical records."  [*Id.* at 10].  Allstate reviewed the newly disclosed medical records and in doing so learned that the records were duplicative of those already submitted.  Allstate determined Plaintiff had not provided the pre-surgical physical therapy records as requested and, "[w]ithout any new information, Allstate again offered $65,000.00."  [*Id.*]  On February 2, 2017, Plaintiff's counsel told Allstate that it had enough information to evaluate his claim.  Plaintiff filed this lawsuit the following day.  [*Id.*]

Mr. Meek first contends that Allstate did not dispute that his injuries were caused by the accident and, despite Allstate's valuation of the claim at $65,000, has provided no explanation for failing to render payment as the Parties continue to dispute the value of the claim, and cites *Fisher* for support.  [#27 at 12].  Plaintiff argues as a second matter that "fair debatability" of the

16

insurer's conduct is merely one factor to consider in examining whether the insurer acted reasonably, and that, moreover, Allstate has produced no evidence "that the 'fair debatability' of its conduct is undisputed"; Plaintiff asserts that Allstate's conduct in handling his claim "violated a number of practices prohibited by Colorado's Unfair Claims Settlement Practices Act including refusing to pay claims without a reasonable investigation." [*Id.* at 13, 16]. For support, Plaintiff references Allstate's repeated requests for pre-surgical physical therapy records, proof of wage loss, and proof of permanent impairment, and states that "[t]he reasons, if any, as to why this information was critical to determine whether Plaintiff's damages exceeded the $100,000 in available coverage were never enunciated." [#27 at 16 (citing #26-3)]. Plaintiff also asserts that, as it was Allstate's duty to adjust the claim, the claim adjuster "could have resolved any doubts she had about Plaintiff's claim in a number of other ways," such as, "request[ing] Plaintiff complete a statement under oath, sign a sworn proof of loss or...request[ing] [that] Plaintiff, accompanied by counsel, participate in a personal interview." [*Id.* (citing Colo. Rev. Stat. § 10-3-1104(IV))].

In reply, Allstate disputes that *Fisher* applies to this case because the $65,000 offer was a settlement offer for Plaintiff's entire UIM claim and not an offer for undisputed medical expenses or wage loss, and asserts that Plaintiff fails to demonstrate that a valuation dispute gives rise to a bad faith claim. [#30 at 1].[5]

---

[5] The Colorado Supreme Court has granted a petition for certiorari on a single issue in *Fisher*: "Whether the court of appeals incorrectly ruled that automobile insurers have a duty to advance partial payments on undisputed portions of an uninsured/underinsured ('UM/UIM') claim even though the complete claim has not been resolved." *State Farm Mut. Auto. Ins. Co. v. Fisher*, No. 15SC472, 2016 WL 3207869 (Colo. June 6, 2016). The court need not resolve the Parties' dispute regarding the applicability of *Fisher* to adjudicate the Motion for Summary Judgment, and reserves judgment on this issue subject to a ruling by the Colorado Supreme Court.

B.      Findings

I find that the record contains at least three sets of disputed material facts that prevent summary judgment.  The first set pertains to the bulk of the Parties' disputed facts, and relates directly to whether, and to what extent, Allstate would have revised its offer had it known no pre-surgical physical therapy records existed and had it received documentation regarding wage loss.

In the Demand Letter, dated August 29, 2016, Plaintiff's counsel wrote in relevant part that Plaintiff "reported no hip pain prior to this collision…Mr. Meek's physical therapist worried there may be a labral issue…Dr. Weller agreed and opined there may be a cartilage issue and requested an MRI."  [#27-1 at 3].  The Demand Letter also described how Plaintiff had trouble performing some of his job duties following the accident.  *See* [*id.* at 7-8].  The Demand Letter stated that "[t]he amount of compensable loss for pain and suffering and loss of enjoyment of life should be at least equal to the amount of economic loss, as there is clearly a direct relationship between them, though likely worth much more to any reasonable person."  [*Id.* at 8].

Based on the reference to a physical therapist in the Demand Letter, Allstate believed pre-surgical physical therapy records existed for Plaintiff.  On September 14, 2016, the claim adjuster notated as part of her assessment that she valued the claim between $65,301.07 and $75,301.07, and that "there are missing p/t records, consider another $5k potentially if he had p/t…$70,301.07-80,301.07 is my high range."  [#26-2 at 34].  Allstate then asked for the pre-surgical physical therapy records in September 2016 and December 2016.  *See* [#26-2 at 36, 44]. In a letter dated September 22, 2016, Allstate informed Plaintiff's counsel of the offer of $65,000 to settle the UIM claim, and wrote in relevant part as follows:

> The records right after the loss indicate initial injuries are neck and shoulder pain, he was given flexeril and imaging showed negative but for degeneration at C5C6.

He went into the doctor approximately 3 months later with the new complaint of hip and knee pain stating to the doctor that he wonders if it could be related to the accident. The doctor ordered MRI showing labral tear of the right hip. He had no continued complaints of neck or shoulder pain.

We do not have physical therapy records or billing prior to the surgery to review. The surgery was successful, he was doing very well post-surgery with therapy despite an exacerbation where he tripped over his dog. Your demand letter makes mention of his therapist stating his hip may have a labral tear which I assume prompted him to return to the doctor. Again we do not have these records or bills.

We have follow up physical therapy records to July 13, 2016 post surgery. I considered duties under duress as he is very active and an avid skier in which he postponed surgery in order to be able to ski most of the 2015-2016 ski season.

I received no wage loss documentation. Your demand letter states he aggravates his hip at work, and complaints of his knee is still being an issue at work, and that computer work aggravates his neck and shoulder pain. You also state he has pain while driving. I have no medical documentation supporting these claims. I do not have any documentation beyond the initial doctor visit regarding the knee that any ongoing complaints were present.

I have no indication of ongoing problems or that he did not make a full recovery from this injury. I do not have any information that he has any permanent impairment from this injury.

[#26-2 at 36-37].  Plaintiff's counsel responded that physical therapy was ongoing, and that Allstate had all the available physical therapy records, but offered to send in copies which the claim adjuster ultimately noted were duplicates.  The claim notes dated December 13, 2016 reflect a telephone conversation between the claim adjuster and Plaintiff's attorney and the following notes:

attorney called…she adv $53,396 bill for surgery alone…I do not have Denver p/t – she adv that is ongoing so I do not have all of them, but I should have some of them, I adv did not get any Denver p/t records…no wage loss doc or supporting doc for problems doing job now that he is back to work…she will not settle for less than policy limits…I adv then I need more information that is missing…she will send for re eval.

[#26-2 at 44].  The claim notes regarding a subsequent telephone conversation held that month state, "[attorney] adv she will not get any wage loss information due to his position in the

company, is salaried so no documentation to time loss, he did not lose wages, they understood he needed to change hours for surgery." [*Id.* at 45].

With respect to the pre-surgical physical therapy records, Plaintiff testified during his deposition that he had visited his daughter's physical therapist once after the accident, for approximately ten minutes, and that the physical therapist "indicated within the first five minutes of doing some mobilization treatments, she felt what was going on was structural, and [Plaintiff] couldn't fix it with physical therapy." [#27-10 at 55:1-56:25]. Plaintiff thereafter saw his primary care physician, who ordered an MRI of Plaintiff's hip, and hip surgery followed. [*Id.*] It is unclear whether pre-surgical physical therapy records existed other than what Plaintiff asserts its counsel provided to Allstate.[6] Allstate denies that Plaintiff produced pre-surgical physical therapy records prior to litigation, and asserts that "Plaintiff now contends that his therapist does not have any records on file," but that prior to litigation, "Plaintiff never indicated such to Allstate even after Allstate made numerous requests for those records." [#30 at 5, ¶ 23]. It appears that Allstate declined to reevaluate the $65,000 settlement offer in part due to what it perceived as missing physical therapy records.

With respect to documentation regarding Plaintiff's wage loss, the record shows that the offer letter faxed to Plaintiff's counsel in September 2016 described why Allstate sought the wage loss documentation: "Your demand letter states he aggravates his hip at work, and complaints of his knee is still being an issue at work [sic], and that computer work aggravates his neck and shoulder pain. You also state he has pain while driving. I have no medical documentation supporting these claims…" [#26-2 at 36]. Plaintiff's attorney thereafter represented during a December 13, 2016 phone call that Plaintiff was not seeking lost wages.

*See* [#26-2 at 44]. However, the claim adjuster explained in a fax response to Plaintiff's attorney dated December 16, 2016: "I understand you are not claiming wage loss but you are claiming difficulties while working and driving, I had requested the documentation to support this. I have not received it. I did consider he was working while recovering from this injury." [#26-2 at 46]. And, in a letter dated December 19, 2016, which Allstate may or may not have received, Plaintiff's counsel referred to lost wages as part of the settlement, asking that Allstate provide within five business days "a list of each individual medical bill considered," and to "address the value provided for physical and mental pain and suffering, loss of employment of life, lost wages, and permanent impairment," and to provide Allstate's "valuation of the projected need for future treatment into the foreseeable future." [#27-7 at 1-2].

It appears to the court that the two sides' inability to communicate effectively lies at the core of this material dispute. Allstate purportedly offered Plaintiff less than his policy limits, despite the fact that he was determined to be at no fault for the accident and had supplied medical bills evidencing $73,747.69, on the basis that Plaintiff had failed to submit pre-surgical physical therapy records, wage loss documentation, and evidence of a permanent impairment. *See* [#26-2 at 33].[7] In Reply, Allstate contends that it "suspected Plaintiff's extensive medical history, ongoing physical activities, and physical lifestyle were the likely cause of any alleged permanent impairment and/or current symptomatology." [#30 at 4, ¶ 12]. But Plaintiff's Demand Letter is the only evidence Allstate cites to in support of its expressed suspicion, *see id.*, and the Demand Letter does not establish undisputed facts in support of its position. *Cf. Sipes v. Allstate Indem.*

---

[6] It is unclear to the court whether the receipt contained in the records attached to the Demand Letter represents the pre-surgical physical therapy records. *See* [#27-1 at 39].

[7] The claim adjuster reviewed the medical bills as totaling $70,301.07 and noted her opinion that the "surgical center billing is very high, negotiate that cost," but Allstate does not list this is a

*Co.*, 949 F. Supp. 2d 1079, 1090-91 (D. Colo. 2013) (denying motion for summary judgment where genuine disputes of material fact existed regarding whether it was reasonable for Allstate to make certain inferences in its decision to deny insurance benefits).

Allstate's suspicion regarding Plaintiff's lifestyle and preexisting medical history potentially could have been resolved with medical evidence regarding the permanency of Plaintiff's injury.  However, there is a dispute of fact as to whether Allstate asked Plaintiff for a signed medical record release and, if Allstate did ask, whether Plaintiff's counsel failed to have her client sign the release, *see* [#27 at 4, ¶ 6; #30 at 4, ¶ 16], which altogether constitutes the second set of disputed facts.  In the fax response to Plaintiff's attorney dated December 16, 2016, the claim adjuster wrote, "I also have not received the documentation requested to support your claims of permanent impairment due to this injury."  [#26-2 at 46].  Neither side followed up with the other about this documentation.  These disputed facts impact both Allstate's assessment of the claim as discussed above and the question of whether Allstate failed to investigate, as described in section 10-3-1104(1)(h)(IV).

Finally, the third set of disputed facts pertains to the December 19, 2016 letter, which asked for a written explanation should Allstate continue to evaluate the UIM claim at less than the policy limits of $100,000.  [#27-7 at 2].  Under section 10-3-1104(1)(h)(XIV), an insurer shall promptly provide a reasonable explanation for a denied claim, and, as with section 10-3-1104(1)(h)(IV), failure to do so implicates section 10-3-1113(4). Allstate disputes that it received the December 19, 2016 letter.  *See* [#26 at 5, ¶ 21].

In reviewing these disputed facts alongside the applicable law, I find that they necessarily preclude summary judgment in favor of Allstate on Plaintiff's first three claims. Although

---

reason for offering Plaintiff less than policy limits.  *See* [#26-2 at 33, 34].  Plaintiff states in his

Plaintiff does not address his breach of contract claim in the Response, I find that he has nonetheless set forth evidence of a contract and damages, that Defendant does not dispute that Plaintiff performed under the contract,[8] and that there are disputed material facts as to whether Defendant breached the contract.  With respect to the statutory and common law bad faith claims, I find for the reasons stated above that disputes of material fact exist as to whether Allstate acted reasonably, *see Meadows*, 2016 WL 7868824, at *10 (noting that reasonableness of the insurer's conduct is an element of both the statutory and common law claims); and the disputed fact regarding whether Allstate received the December 19, 2016 letter is material to the second component of the tort claim regarding knowledge or reckless disregard.[9]

Finally, I consider Plaintiff's fourth claim for "Claim for Underinsured Motorist Benefits." [#3 at 6].  The allegations supporting the claim state that Plaintiff has advised Allstate of his UIM claim and otherwise fully cooperated with Defendant; Plaintiff is the intended beneficiary of his contract with Defendant; and Plaintiff is entitled to be compensated by Defendant for all damages he has incurred.  [*Id.* at 6-7].  Although the Motion for Summary Judgment appears to limit the relief it seeks to only the first three claims, the fourth claim appears to the court to be duplicative of the first claim for breach of contract.  Indeed, the court perceives no relief that Plaintiff could obtain through his fourth claim that he cannot obtain

---

Response that he submitted medical bills totaling $77,000.  [#27 at 17]; *see* [#27-1 at 5].

[8] To the extent Defendant argues Plaintiff failed to cooperate with the claim process, this is a disputed material fact.

[9] To the extent Allstate would argue these disputed facts made the claim fairly debatable and therefore subject to summary judgment in its favor, the court notes that these facts are viewed in a light most favorable to Plaintiff at this juncture, and "a 'fairly debatable' showing, standing alone, is insufficient to support summary judgment for the insurer."  *TBL Collectibles, Inc. v. Owners Insurance Company*, 285 F. Supp. 3d 1170, 1202 (D. Colo. 2018) (quoting *Glacier Construction Co. v. Travelers Property Casualty Co. of America*, 569 F. App'x 582, 590 (10th Cir. 2014); *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1260–62 (10th Cir.

through his first claim.  The Parties should be prepared to address the viability of this fourth claim in a motion *in limine* or at the Final Trial Preparation Conference.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Allstate Fire and Casualty Insurance Company's Motion for Summary Judgment [#26] is **DENIED**.

DATED:  May 21, 2018                              BY THE COURT:

_____
United States Magistrate Judge

---

2016) (rejecting argument that, "under Colorado law, an insurer cannot act unreasonably in denying a fairly debatable claim")).