IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00606-NYW

CHRISTOPHER MEEK,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Plaintiff Christopher Meek's ("Plaintiff" or "Mr. Meek") First Motion in Limine ("Motion" or "Motion to Exclude"). [#46, filed May 18, 2018]. This action and the Motion are before the court pursuant to the Order of Reference dated April 19, 2017 [#17], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. The court has carefully considered the Motion and Response thereto, the entire case file, and the applicable case law. For the following reasons, Plaintiff's Motion to Exclude is **DENIED**.

## BACKGROUND

    Plaintiff was in a motor vehicle accident with an underinsured driver on July 9, 2015. He claims to have sustained injuries to his neck and hip in the collision, and he underwent surgery to repair a labral tear in his right hip. At the time of the accident, Plaintiff was insured by Defendant Allstate Fire and Casualty Insurance Company ("Defendant" or "Allstate") under a policy providing for Underinsured Motorist ("UIM") coverage up to $100,000. Plaintiff submitted a UIM claim for policy limits and, on September 2016, Allstate extended an offer of

$65,000.

Plaintiff thereafter initiated this action on February 3, 2017, by filing a Complaint in the District Court for Denver County, Colorado asserting four claims for Breach of Contract, "Violation of C.R.S. § 10-3-1115/First Party Statutory Claim pursuant to C.R.S. § 10-3-1116," Breach of Duty of Good Faith and Fair Dealing, and "Claim for Underinsured Motorist Benefits." [#3]. Allstate timely removed the action to this court asserting jurisdiction pursuant to 28 U.S.C. § 1332, *see* [#1], and filed an Answer, [#12].

After the close of discovery, Allstate filed a Motion for Summary Judgment as to Plaintiff's first three claims, but not as to the fourth claim. *See* [#26]. Allstate argued that the record demonstrates that the Parties merely disagreed on the amount of benefits owed, that there is no evidence to show that Allstate unreasonably delayed or denied payment of insurance benefits to Plaintiff, or that Allstate failed to perform under the contract or acted unreasonably or in violation of industry standards, and that, under Colorado law, an insurer may challenge claims that are "fairly debatable." [#26 at 2, 8]. Mr. Meek argued in response that Allstate improperly delayed payment of his claim by repeatedly requesting physical therapy records, which his attorneys had already provided, and wage loss documentation, which he states was irrelevant to his claim, that Allstate's conduct violated multiple provisions of the Unfair Claim Settlement Practices Act, and that Allstate is liable for bad faith by "continuing to force its insured to expend resources litigating issues raised by its Motion that Colorado Courts have consistently rejected." [#27 at 2-3, 10].

On April 3, 2018, the court held a Final Pretrial Conference, [#37], and entered a Final Pretrial Order, setting a Trial Preparation Conference for August 17, 2018 and a five-day trial to commence August 20, 2018. [#38]. The Final Pretrial Order set a deadline of May 18, 2018 for

the Parties to file any motions pursuant to Rule 702 of the Federal Rules of Evidence. [*Id.* at 13]. The court thereafter issued a Trial Preparation Order. *See* [#41]. On May 18, 2018, Plaintiff filed the instant motion. Although styled as a Motion in Limine, the Motion seeks to exclude testimony relating to an independent medical examination provided by Defendant's specially-retained expert, Gwendolyn Henke, M.D., and is more appropriately characterized as a motion to exclude under Rule 702. *See* [#46]. Accordingly, this court will construe the Motion and refer to it as a Motion to Exclude Dr. Henke. Defendant filed its Response on June 8, 2018, [#49].

On May 21, 2018, the court denied the Motion for Summary Judgment, finding that the Parties disputed the following material facts: whether Allstate would have assessed Plaintiff's claim differently absent the misunderstanding related to the physical therapy records and lost wage documentation; whether Allstate received certain correspondence from Plaintiff during the course of the claim process; and whether Allstate supplied and Plaintiff failed to execute a release for his medical records. *See* [#47]. With respect to the fourth claim, the court observed that the claim appears to be duplicative of the first claim for breach of contract, and questioned whether Plaintiff could obtain any relief through his fourth claim that he could not obtain through his first claim. *See id.* The court instructed the Parties to be prepared to address the viability of the fourth claim in a motion in limine or at the Final Trial Preparation Conference.

On July 12, 2018, Plaintiff filed a second Motion in Limine, identifying eight topics of evidence he wishes to preclude. *See* [#50]. On July 26, 2018, Defendant filed a Response opposing five of the topics and partially opposing a sixth topic. *See* [#52]. With this Order, the court addresses only the Motion to Exclude.

3

**ANALYSIS**

On July 24, 2017, Dr. Henke performed an independent medical examination ("IME") of Plaintiff, which included her review of his medical records following his involvement in the July 9, 2015 automobile accident. *See* [#46-1]. Dr. Henke opined in relevant part that Plaintiff sustained the following injuries as a result of the motor vehicle accident: acute cervical strain; acute shoulder girdle strain; and multiple contusions. [*Id.* at 5]. She further opined that as of the date of the IME Plaintiff had fully recovered without permanent impairment or need for further treatment, and that the pain associated with his right hip is the result of a pre-existing condition and not injuries sustained during the motor vehicle accident. [*Id.*].

Opinion testimony based on scientific, technical, or other specialized knowledge must be offered by an expert witness pursuant to Rule 702. Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 states that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A court's analysis pursuant to Rule 702 must also consider relevance; expert testimony is admissible where it has a valid bearing on the facts of the case, is sufficiently tied to the facts of the case, and will assist the jury in resolving a factual dispute. *Daubert v. Merrell Dow Pharmaceutical Co.,* 509 U.S. 539, 591 (1993). Put another way, the court first decides whether the proffered testimony is reliable, and then whether "it is relevant to the task at hand." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233–34 (10th Cir.2004) (citing *Daubert*, 509 U.S. at

597). The proponent of expert evidence bears the burden of establishing its admissibility. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001). And it is well established that a district court has broad discretion in assessing an expert's reliability and relevance. *Dodge v. Cotter Corp.,* 328 F. 3d 1212, 1223 (10th Cir. 2003).

Plaintiff appears to concede that Dr. Henke is qualified as an expert. Plaintiff questions instead the reliability of Dr. Henke's opinion that his right hip injury is caused by a pre-existing condition, and asserts that such opinion "is unsubstantiated by any records or evidence and should be excluded pursuant to Rule 702 as it is not reliable." [#46 at 8]. Most of Mr. Meek's arguments focus on the second prong of the *Daubert* analysis, i.e., Dr. Henke's testimony is not relevant because the IME was administered after Defendant had denied the claim, and the court should preclude Dr. Henke from testifying as to injuries for which Plaintiff does not seek damages. *See* [#46 at 5-7]. Although not argued in this order by the Parties, the court first considers reliability, and then turns to relevance.

I. **Reliability**

Plaintiff contends that Dr. Henke's opinion that his "current complaint of right hip pain is entirely due to a pre-existing condition and not causally related to any injury sustained in the motor vehicle accident of July 9, 2015," is "unsubstantiated by any records or evidence and should be excluded pursuant to Rule 702 as it is not reliable." [#46 at 8]. For support, Plaintiff argues that "[t]here are not any medical records cited by Henke to suggest Plaintiff has a progressively deteriorating range of motion in his left hip," and "Henke's report does not provide any details into her physical exam findings of Plaintiff that would suggest he had a decreased range of motion in his left hip." [*Id.*] In response, Defendant argues that "Plaintiff failed to present any argument or evidence challenging Dr. Henke's opinions and methodology pursuant

5

to Fed. R. Evid. 702," but does not directly address Plaintiff's contention that Dr. Henke's opinion regarding Plaintiff's right hip is unsubstantiated by medical records. *See* [#49 at 1-3].

The court's role in considering proposed expert evidence is one of a "gatekeeper," to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Dodge*, 328 F. 3d at 1222 (citation omitted). The gatekeeper function requires the court "to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts," *id.* (citation omitted), and, where expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question…the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 149).

As an initial matter, this court finds Plaintiff's challenge to the reliability of Dr. Henke's opinion overbroad. Plaintiff contends that Dr. Henke's opinion that his "current right hip pain is entirely due to a pre-existing condition and not causally related to any injury sustained in the motor vehicle accident of July 9, 2015," is unreliable based on the lack of medical records regarding his left hip. [#46 at 8]. But this argument ignores Dr. Henke's statement in the IME report that her discussion of Plaintiff's medical conditions and medical records "should be considered to be in my medical opinion to a reasonable degree of medical certainty, based on my review of the available records, my physical examination of Mr. Meek, and my orthopedic training and experience." [#46-1 at 5]. Therefore, this court construes Plaintiff's challenge as one questioning the relationship between a finding of deterioration in his left hip, and the conclusion that the right hip pain is the result of a preexisting condition and not an acute injury caused by the motor vehicle accident.

6

Plaintiff does not contest that Dr. Henke is qualified to render an expert opinion regarding his medical records and condition, but rather argues that she had insufficient evidence to render that opinion. In her Report, Dr. Henke states that Mr. Meek "has radiographic features of [femoroacetabular impingement ("FAI")] and progressively deteriorating range of motion of his, as yet, painless left hip." [#46-1 at 5]. She explained that in arriving at her opinion, she reviewed Plaintiff's clinical presentation and hip pathology and determined that the onset of pain when his right hip flexed past 90 degrees weeks to months after the accident is inconsistent with an acute traumatic tear and rather entirely consistent with FAI. *Id.* Dr. Henke identified the medical records and other documents that she reviewed as: radiology reports dated July 14, 2015, through November 2, 2015; Comprehensive Family Medicine notes by Kenneth Weller, M.D., dated July 14, 2015 through November 5, 2015; Orthopedic Associates records by Leslie Vidal, M.D., dated November 6, 2015, through January 19, 2017; Mile High Surgery Center operative report dated March 4, 2016; ProActive Physical Therapy notes dated March 14, 2016, through July 13, 2016; Peak Orthopedic and Spine records by Mark Fitzgerald, M.D., dated July 28, 2016, through December 13, 2016; Sky Ridge Surgical Center operative note dated September 14, 2016; ProActive Physical Therapy notes dated September 22, 2016, through December 30, 2016; medical bills; and a pain questionnaire dated July 24, 2017. [#46-1 at 1-2]. Dr. Henke concluded that Plaintiff's right hip pain was the result of developmental dysplasia rather than an acute traumatic tear. *Cf. Etherton v. Owners Insurance Company*, 829 F.3d 1209, 1223 (10th Cir. 2016) (affirming trial court's ruling that expert testimony "fit" the case where expert's qualifications were not contested, his opinions about plaintiff's injuries did not rely solely on generalized knowledge but also on his specialized experience, and he testified as to causation of plaintiff's injuries, which was a central issue of the case). *See also Kumho Tire Co.*, 526 U.S. at

148-49 (accepting that experts of all kinds "tie observations to conclusions through the use of… 'general truths derived from…specialized experience'") (quoting Judge Learned Hand, Historical and Practical Considerations Regarding Expert Testimony, 15 Harv. L.Rev. 40, 54 (1901)).

The court notes that Defendant fails in its Response to address specifically Plaintiff's contention that Dr. Henke's opinion regarding the right hip is unsubstantiated by medical records. To the extent Defendant fails during trial to lay the proper foundation for Dr. Henke's opinions regarding the features of Mr. Meek's left hip, and their relationship to her opinions regarding his right hip, the court will entertain at that time a renewed motion to exclude such opinions. Otherwise, Plaintiff's arguments go to the weight, rather than the admissibility, of any such opinions and the court finds that the opinions are not properly excluded on the basis of reliability.

## II. Relevance

The court now turns to considering the relevance of the proffered opinions. Rule 401 of the Federal Rules of Evidence advises that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). The court may nonetheless exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id*. at 403.

### A. Dr. Henke's Testimony in General

Plaintiff argues that Dr. Henke's testimony is not helpful to the trier of fact and not relevant because the IME was ordered and administered after Plaintiff had initiated this action, and thus Allstate did not rely on the IME findings in rendering its claim determination. Plaintiff

asserts that because Allstate did not rely on the IME findings in denying policy limits, those findings are not relevant to his claim that Allstate acted in bad faith. Defendant argues in response that during the course of litigation, it received new medical documentation through Plaintiff's Rule 26(a)(1) initial disclosures and supplemental disclosures. Defendant asserts that this documentation caused it to pursue an IME with Dr. Henke "in order to evaluate causation, the Plaintiff's pre-MVA injuries and complaints, bolster its mitigation defense, and evaluate whether and how Plaintiff's active lifestyle impacted his injuries allegedly caused by the motor vehicle accident at issue." [#49 at 5]. In addition, Defendant argues, the IME results and Dr. Henke's testimony are relevant to its claims and defense insofar as Allstate denies that it overlooked any material facts during the claims process or lacked a reasonable basis for its claim decision. [*Id.* at 6]. Allstate contends that it will be prejudiced if the court precludes it from presenting evidence to show that "additional pre-litigation investigation would not have changed the outcome of the claim and that Allstate's claims handling and ultimate decision regarding claim value was reasonable." [*Id.*]

First, the court finds that Dr. Henke's evaluation of Mr. Meek arising from the IME may be relevant to Plaintiff's first claim for breach of contract, i.e., whether Allstate owed Plaintiff any benefits under his coverage and, any damages associated with a breach of contract. To the extent that Dr. Henke's physical evaluation of Mr. Meek indicates that his right hip injury arose not from an acute onset caused by the motor vehicle accident but rather from unrelated degeneration, such an opinion is relevant to whether Allstate breached its contract with Mr. Meek.

Second, as discussed in the court's ruling on the Motion for Summary Judgment, with respect to a first-party claim of bad faith, Plaintiff must show that Allstate's conduct was

9

unreasonable and that Allstate acted with knowledge or reckless disregard that its conduct was unreasonable. *See Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1272, 1274-75 (Colo. 1985) ("Whether an insurer has acted reasonably in denying or delaying approval of a claim will be determined on an objective basis, requiring proof of the standards of conduct in the industry. The second element of the test reflects a reasonable balance between the right of an insurance carrier to reject a non-compensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim of its insured."). With respect to the statutory claim for Allstate's allegedly unreasonable delay or denial of payment, Plaintiff must show only that Allstate acted unreasonably. *See, e.g., Etherton*, 829 F.3d at 1226-27.

One of the factual disputes in this case concerns missing medical documentation, including identifying who was responsible for providing or procuring those documents and determining to what extent those documents would have impacted Allstate's claim determination. Indeed, Allstate contends that Plaintiff failed to provide it with all of his medical records, and that in any event it acted on a reasonable basis in denying the claim for policy limits. The Parties do not dispute that the following records were available to Allstate during its claim process: the Comprehensive Family Medicine notes; the Orthopedic Associates records; the Mile High Surgery Center operative report; and post-surgery physical therapy records. *See* [#26 at 3, ¶ 3]. And as discussed above, Dr. Henke reviewed the following medical records as part of the IME:

- Radiology reports dated July 14, 2015, through November 2, 2015;
- Comprehensive Family Medicine notes by Kenneth Weller, M.D., dated July 14, 2015, through November 5, 2015;
- Orthopedic Associates records by Leslie Vidal, M.D., dated November 6, 2015, through January 19, 2017;
- Mile High Surgery Center operative report dated March 4, 2016;
- ProActive Physical Therapy notes dated March 14, 2016, through July 13, 2016;

- Peak Orthopedic and Spine records by Mark Fitzgerald, M.D., dated July 28, 2016, through December 13, 2016;
- Sky Ridge Surgical Center operative note dated September 14, 2016;
- Radiology report dated December 7, 2016;
- ProActive Physical Therapy notes dated September 22, 2016, through December 30, 2016;
- Medical bills;
- Pain questionnaire dated July 24, 2017.

[#46-1 at 1-2].

I find that the IME and Dr. Henke's testimony regarding her findings are relevant to Allstate's defenses that it acted reasonably with the information it had in its possession during the claim determination, and that the additional medical documentation that was purportedly missing during the claim review was not material to the claim decision. *See Peiffer v. State Farm Mutual Auto. Ins. Co.*, 940 P.2d 967, 970-71 (Colo. App. 1996) (finding trial court erred in excluding testimony of neuropsychologist who had examined plaintiff's medical records after litigation had begun, holding that neuropsychologist's opinion "supported the defense theory that plaintiff was not suffering from any brain injury and that continued psychotherapy was not warranted," which theory was part of defendant's justification in its claim denial letter). Because the testimony is relevant and Plaintiff asserts no basis on which to find that the testimony is prejudicial, the Motion to Exclude is denied with respect to this general request.

### B. Dr. Henke's Testimony as it Relates to Specific Injuries

Plaintiff argues in the alternative that the court should preclude Dr. Henke's testimony regarding injuries to his left shoulder, left knee, and left hip because he is not seeking damages for those injuries, and rather is seeking damages for only a right hip injury and an injury to his neck. [#46 at 7-8]. Allstate argues that Plaintiff placed the injuries to his left shoulder and left knee at issue when he referenced them in his August 29, 2016 demand letter as caused by the accident and as exacerbated by his job duties, and that Dr. Henke's opinions regarding Plaintiff's

11

left hip are relevant to Plaintiff's pre-existing condition. *See* [#49].

> *Left Shoulder and Left Knee*. Plaintiff's August 29 demand letter asserts:
>
> Prior to the [July 21, 2015 incident], [Plaintiff] was in no duress or pain…His job duties as a construction manager are physically taxing when in the field which continues to aggravate his hip and **knee** pain. Job duties also entail computer work also aggravating his hip, neck and **shoulder** when in the office. Driving from job site to job site is painful as well. Mr. Meek was healthy and active prior to this incident…As a result of the severity of the impact from the collision, Mr. Meek **endured injuries** to his right hip, chest, neck, **shoulder and knee**.

[#49-3 (emphasis added)]. In a Fourth Supplemental Disclosure served under Federal Rule of Civil Procedure 26, Plaintiff referred to certain medical documentation in his description and computation of damages, including documentation from Peak Orthopedics with the notation that "[t]his amount will be supplemented as additional expense [sic] are received." [#49-4 at 2]. Included as part of the Peak Orthopedics records, at Bates label PeakOrtho000001, and attached to Defendant's Response, is a summary of Plaintiff's left shoulder pain dated December 13, 2016. [#49-5]. The record is unclear as to when Plaintiff provided this specific record of shoulder pain. However, the demand letter clearly claims shoulder and knee injuries as a result of the accident, and Plaintiff does not cite the court to correspondence in which he or his attorneys disavow these injuries as caused by the accident or as a source of damage he claims as a result of the accident. Indeed, in a letter dated September 22, 2016, Allstate alerted Plaintiff that it was missing documentation to support the claimed knee and shoulder injuries caused by the accident. *See* [#26-2 at 36-37]. Accordingly, I agree with Allstate that Plaintiff placed his knee and shoulder injuries at issue, at least for the purpose of Allstate's investigation into the claim, and find that, to the extent Dr. Henke discusses in her report the injuries to Plaintiff's left shoulder and left knee, such testimony is relevant to whether Allstate acted reasonably in reaching its claim decision.

*Left Hip*.  Plaintiff underwent arthroscopic right hip surgery on March 4, 2016.  Dr. Henke observed that the findings were "an anterosuperior acetabular labral tear with adjacent articular cartilage wear."  [#46-1 at 3].  She opined that, several months after the accident, Plaintiff "noted the onset of right groin pain when his right hip was flexed over 90 degrees during activities of daily living and recreational activities," and that while acute traumatic hip labral tears can occur related to motor vehicle accidents, Plaintiff's "insidious onset of pain when his right hip flexed past 90 degrees weeks to months after the accident is inconsistent with an acute traumatic tear."  [*Id.* at 5].  She explained her reasoning as follows:

> An acute traumatic labral tear would be accompanied by a hip joint effusion. The hip would be painful with weightbearing and even gentle range of motion. His clinical presentation and hip pathology are entirely consistent with femoroacetabular impingement, which is a type of developmental dysplasia unrelated to trauma associated with specific labral tears and early hip osteoarthritis.

[*Id.*]  Presumably, Dr. Henke compared the diagnosis of FAI for Plaintiff's right hip to radiographic imaging of the left hip, which indicated FAI, and opined: "He has radiographic features of FAI and progressively deteriorating range of motion of his, as yet, painless left hip. Thus, his current complaint of right hip pain is entirely due to a pre-existing condition and not causally related to any injury sustained in the motor vehicle accident of July 9, 2015."  [*Id.* at 5-6].  But as discussed above, to the extent that Defendant fails to lay a proper foundation at trial for her opinions related to Plaintiff's left hip, she will be precluded from presenting them.

Further, I find that Dr. Henke's opinion is relevant to Allstate's defense that it acted reasonably.  Indeed, one basis on which Allstate denied policy limits was its determination that Plaintiff had failed to submit evidence of a permanent impairment.  *See* [#26-2 at 33].  And in briefing the Motion for Summary Judgment, Allstate asserted that it "suspected Plaintiff's extensive medical history, ongoing physical activities, and physical lifestyle were the likely

cause of any alleged permanent impairment and/or current symptomatology." [#30 at 4, ¶ 12]. In ruling on the Motion for Summary Judgment, the court observed that Plaintiff's Demand Letter was the only evidence Allstate cited to in support of its expressed suspicion, and that it was not willing to rule as a matter of law that Allstate's inference was reasonable. *See* [#47 at 21]. However, Dr. Henke's examination of Plaintiff and her findings are relevant to whether Allstate's inference was reasonable. Accordingly, the court declines to exclude Dr. Henke's opinions on the basis of relevance.

For the foregoing reasons, **IT IS ORDERED** that the Motion to Exclude [#46] is **DENIED**.

DATED: August 7, 2018

BY THE COURT:

_____
United States Magistrate Judge